1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMERICA CARGO TRANSPORT, INC.,

               Plaintiff,

   v.

UNITED STATES OF AMERICA,

               Defendant.

CASE NO. C05-393JLR

ORDER

    This matter comes before the court on Defendant United States' ("the Government") motion to dismiss certain claims and limit the scope of review (Dkt. # 66). Having considered the papers filed in support of and in opposition to the motion and the entire case history, the court GRANTS the motion.

## I. BACKGROUND

    Plaintiff America Cargo Transport, Inc. ("ACT") is a Washington corporation that owns and operates U.S.-flag cargo vessels transporting various goods throughout the world. In March 2005, ACT filed suit for injunctive and declaratory relief against the Government, through its Agency for International Development ("USAID") and the Maritime Administration ("MARAD"), for an alleged contravention of federal cargo preference laws in violation of the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702-706. Compl. ¶ 1 (Dkt. # 1). After its motion for a preliminary injunction was

ORDER – 1

denied, ACT amended its complaint by adding Privacy Act and unjust enrichment claims.

ACT also made new allegations that the district court possessed exclusive subject matter

jurisdiction, conferred by 28.U.S.C. § 1333, over consideration of its bid for a maritime

contract.  Sec. Am. Compl. ¶¶ 1, 46-50 (Dkt. # 65).

The parties' dispute centers around a solicitation for bids issued by the private

charities C.A.R.E. and Catholic Relief Services ("CRS") to transport cans of vegetable oil

from Texas to India.  ACT contends that USAID violated 46 C.F.R. § 381.5 by failing to

seek MARAD's concurrence before rejecting ACT's bid in favor of bids from foreign

flagged vessels to carry the cargo.  Sec. Am. Compl. ¶ 27.  That regulation implements

the Cargo Preference Act and the Federal Food Security Act, which together impose

requirements designed to promote the shipping of cargo procured, furnished, or financed

by the Government on privately-owned, U.S.-flag commercial vessels.  *See* 46 U.S.C.

§§ 55305(b); 55314(a)(1).  Section 381.5 provides:

> Each department or agency having responsibility under the Cargo
> Preference Act of 1954 shall cause each full shipload of cargo subject to
> said act to be fixed on U.S.-flag vessels prior to any fixture on foreign-flag
> vessels for at least that portion of all preference cargoes required by that
> Act and the Food Security Act of 1985 to be shipped on U.S.-flag vessels
> . . . except where such department or agency determines, with the
> concurrence of the Maritime Administration, that (a) U.S.- flag vessels are
> not available at fair and reasonable rates for U.S.-flag commercial vessels,
> or (b) that there is a substantially valid reason for fixing foreign-flag vessels
> first.

The parties stipulated to a six-month stay so that the Government could reconcile a

disagreement between its agencies about how to implement this regulation and, thus, how

to proceed in this litigation.  Stip. Order and Mot. ¶ 1.  USAID did not seek MARAD's

concurrence before making bid recommendations because USAID interpreted the

regulation to mean it must do so only when dealing with a "full shipload of cargo."

MARAD interpreted the regulation to mean that USAID was required seek MARAD's

ORDER – 2

concurrence regardless of whether a full or partial shipload was involved.  The Government has now adopted MARAD's position.

The Government here moves to dismiss ACT's Privacy Act and unjust enrichment claims, as well as to limit the scope of review to the administrative record.  At one point, the Government sought to transfer this matter to the Court of Federal Claims because it has jurisdiction over all government bid solicitations.  Mot. to Transfer at 1 (citing the Administrative Dispute Resolution Act ("ADRA")) (Dkt. # 71).  The Government withdrew the motion because USAID did not itself conduct the solicitation that is the subject of this lawsuit.  Notice of Withdrawal of Mot. to Transfer at 1 (Dkt. # 74).  The solicitation was  conducted by a freight forwarder working on behalf of the private charities C.A.R.E. and CRS.  *Id.*   The court has scheduled oral argument on the Government's pending summary judgment motion (Dkt. # 73).

## II.  DISCUSSION

The parties do not challenge this court's subject matter jurisdiction over ACT's disappointed bidder action.  They disagree about the statutory basis for the court's review and, thus, what forms of relief ACT may seek and evidence it may present.  ACT contends that because the action arises from a solicitation for a maritime contract, it may seek equitable and injunctive relief for all its claims under the Suits in Admiralty Act ("SAA"), 46 U.S.C. § 30901-30918.  It thus seeks to supplement the administrative record with the discovery materials it has collected and would like to collect.  The Government argues that ACT challenges an agency's regulatory application of federal cargo preference laws, which should be reviewed in accordance with the APA's highly deferential arbitrary and capricious standard.  It therefore seeks to dismiss claims for relief that would not be available under the APA, and limit the scope of review to the administrative record.

ORDER – 3

The court agrees with the Government that the basis of the court's subject matter jurisdiction has little bearing on the standard of review to be applied.  Even if the court asserted maritime jurisdiction, the SAA does not allow disappointed bidders to avoid the APA's arbitrary and capricious standard or to seek relief unavailable due to the APA's limited waiver of sovereign immunity.

A.      Disappointed Bidder Claims Under the APA and SAA

"To establish standing to challenge a federal contract award, a disappointed bidder must demonstrate that if its bid had been fairly and honestly considered, there was a substantial chance that [it] would receive an award."  *Look v. United States*, 113 F.3d 1129, 1132 (9th Cir. 1997) (citations omitted) (applying standard articulated in *Energy Transp. Group v. Maritime Admin.*, 956 F.2d 1206, 1211 (D.C. Cir. 1992)).  The invitation to bid, followed by the submission of a bid, creates an implied-in-fact contract obligating the government to consider the bid fairly and honestly.  *See Armstrong & Armstrong, Inc. v. United States*, 514 F.2d 402, 403 (9th Cir. 1975).  *But cf. Block v. United States*, 66 Fed. Cl. 68, 77-78 (Ct. Fed. Cl. 2005) (holding that an implied-in-fact contract requiring the government to fairly consider bids does not survive as a basis for recovery in actions challenging consideration of a bid after enactment of the ADRA, which vests jurisdiction over such actions with the Court of Federal Claims).  Under the law governing procurement decisions, a disappointed bidder may challenge a government contract award under the APA.  *See Iceland Steamship Co. v. United States Dept. of the Army*, 201 F.3d 451, 453 (D.C. Cir. 2000); *see also Parola v. Weinberger*, 848 F.2d 956, 958 (9th Cir. 1988) (noting in a bid-protest case that "[u]nless a statute expressly precludes review . . . a federal district court has jurisdiction over APA challenges to agency actions as claims 'arising under' federal law pursuant to 28 U.S.C. § 1331").  *But cf. Window Sys. v. Manchester Mem'l Hosp.*, 424 F. Supp. 331, 336 (D. Conn. 1976)

ORDER – 4

(finding APA review inappropriate where the contracting institution's relationship to the federal government was too attenuated).

ACT should be familiar with the proper standard of review for its disappointed bidder claim under the APA; it unsuccessfully challenged USAID's implementation of the cargo preference laws in a case before the District of the District of Columbia. *See American Cargo Trans., Inc. v. Natsios*, 429 F. Supp. 2d 139 (D.D.C. 2006), *aff'd*, *American Cargo Trans. v. Tobias*, 222 Fed. App. 2 (2007). The ultimate standard is whether the Government's conduct was arbitrary and capricious toward the bidder-claimant. *Id.* at 146 (citing *Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*, 631 F.2d 953, 960 (D.C. Cir. 1980)); *see Armstrong*, 514 F.2d at 403. "The APA arbitrary and capricious standard of review is narrow in scope and does not permit this Court to substitute its own judgment for that of the USAID." *American Cargo Trans.*, 429 F. Supp. 2d at 147.

ACT attempts to avoid the standard of review applied to disappointed bidders by invoking this court's maritime jurisdiction. *See Exxon Corp. v. Cent. Gulf Lines, Inc.*, 500 U.S. 603 (1991) (setting forth the standard that the nature and subject matter of the contract in question should control whether maritime jurisdiction exists). The Court of Federal Claims and the Northern District of California have held that bid solicitations and bid proposals are not severable from the maritime contracts into which the successful bidders enter and, therefore, bid-protest claims are admiralty actions properly before the district courts. *See Patriot Contract Servs., LLC v. United States*, No. C-04-5428 MJJ, 2005 WL 851019 (N.D. Cal. Apr. 13, 2005), *vacated as moot*, No. 05-1443, 2005 WL 2863042 (Fed. Cir. Oct. 19, 2005) (noting that prevailing party voluntarily dismissed case); *Puglia Eng'g v. U.S. Coast Guard*, No. C 04-04794 CRB, 2005 WL 106785 (N.D. Cal. Jan. 18, 2005); *Asta Eng'g, Inc. v. United States*, 46 Fed. Cl. 674 (Ct. Fed. Cl.

ORDER – 5

2000); *Bayship Mgmt., Inc.*, 43 Fed. Cl. 535 (Ct. Fed. Cl. 1999).  That recognition does not mean, however, that courts will review a disappointed bidder's claims differently. The same courts that found SAA jurisdiction for disappointed bidder cases have applied the APA's arbitrary and capricious standard to the agency's actions.  *See, e.g.*, *Patriot Contract Servs. v. United States*, 388 F. Supp. 2d 1010, 1018 (N.D. Cal. 2005) (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) for rule that courts should respect an executive-branch agency's reasonable interpretation of statutes and regulations the agency is charged with administering); *Puglia Eng'g*, 2005 WL 106785 at *4.

The court here chooses to apply the APA directly to ACT's allegation that the Government did not properly apply its regulation implementing the cargo preference laws.  The solicitation of these bids was conducted by a freight forwarder working on behalf of private charities.  Had ACT won the bid, it would have entered into a contract with the private charities, not the Government.  ACT challenges the Government's implied-in-fact contract to make fair *recommendations* to these charities, who then had an implied-in-fact contract to fairly consider bids before entering into maritime contracts with successful bidders.  The court harbors concerns that this daisy-chained linkage of implied-in-fact contracts may run afoul of the preliminary contract doctrine, which provides that disputes arising out of preliminary services contracts do not invoke maritime jurisdiction.  *See Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 132-33 (2d Cir. 1998).[1]  There is no question, however, that the Government's conduct qualifies under the APA as "[a]gency action made reviewable by statute and final agency action for

---

[1]"The rationale behind the doctrine is that services that are preliminary to, as opposed to being a part of, maritime contracts are too remote to be heard as maritime claims."  *Shipping Fin. Servs.*, 140 F.3d at 133.

ORDER – 6

which there is no other adequate remedy in a court." 5 U.S.C. § 704.  The court therefore

invokes federal question jurisdiction to apply the APA standard of review but notes that

the arbitrary and capricious standard would apply even if the scrim of the SAA were

utilized.

**B.     Unjust Enrichment and Monetary Damages**

ACT sues the Government for unjust enrichment, and seeks as relief "an amount

equal to the difference between ACT's bid and those wrongfully awarded by the

government to foreign flagged carriers."  Sec. Am. Compl. ¶ 49.  As a general rule, the

"United States, as sovereign, is immune from suit save as it consents to be sued . . . and

the terms of its consent to be sued in any court define that court's jurisdiction to entertain

the suit."  *Hercules, Inc. v. United States*, 516 U.S. 417, 422 (1996) (internal quotation

marks removed).  The APA waives federal sovereign immunity only for circumstances

meeting three conditions:  (1) the claims are not for money damages; (2) an adequate

remedy is not available elsewhere; and (3) the claims do not seek relief expressly or

impliedly forbidden by another statute.  *See Tucson Airport Auth. v. Gen. Dynamics*

*Corp.*, 136 F.3d 641, 645 (9th Cir.1998); 5 U.S.C. §§ 702, 704.  Furthermore, the

government has not waived its sovereign immunity as to causes of action based on

contracts implied by law, i.e., quasi-contract, which is the equitable remedy that ACT

seeks through its unjust enrichment claim.  *See Hercules*, 516 U.S. at 423; *see also in re*

*De Laurentiis Entm't Group Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992) ("Quantum meruit

(or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who

has rendered services benefitting the defendant may recover the reasonable value of those

services when necessary to prevent unjust enrichment of the defendant.  Quantum meruit

is not the same as a contract implied in fact.") (citations omitted).

ORDER – 7

ACT argues that the SAA's broad statutory waiver of sovereign immunity applies here as it would for any admiralty tort case because the Government is liable in admiralty in any case "if a private person or property were involved, a civil action in admiralty could be maintained."  46 U.S.C. § 30903(a).  Even if the SAA applied, the fatal flaw of this argument is that no private person could be sued for a violation of the cargo preference laws or the federal regulations implementing them.  The relevant statutes and regulations are directives to be followed by the Government, not private persons.  *See, e.g.*, 46 U.S.C. § 55305(b) ("[T]he appropriate agencies shall take steps necessary and practicable . . . ."); 46 C.F.R. § 381.5 ("Each department or agency having responsibility under the Cargo Preference Act of 1954 shall . . . .).

The Government has not waived its sovereign immunity as to ACT's unjust enrichment claim or monetary damages.  The court therefore dismisses ACT's claim for unjust enrichment and finds that ACT may not seek restitution through monetary damages in this action.

**C.     Privacy Act Claim**

The Privacy Act authorizes an "individual" to bring suit against an offending agency.  5 U.S.C. § 552a(g)(1).  The Act defines an "individual" to mean "a citizen of the United States or an alien lawfully admitted for permanent residence."  5 U.S.C. § 552a(a)(2).  A corporation is not an "individual" within the meaning of the Act and, therefore, has no standing to bring a claim under the Act.  *See Cell Assocs., Inc. v. Nat'l Insts. of Health*, 579 F.2d 1155, 1157 (9th Cir. 1978).

In papers filed with the court before the action was stayed, ACT conceded that it did not have standing to bring a Privacy Act claim.  Opp'n to Mot. to Dismiss at 2 (Dkt. # 47).  The court therefore dismisses the Privacy Act claim.

ORDER – 8

**D.      Limitation to the Administrative Record**

Early on in this matter, the Government permitted USAID to provide documents and deponents to ACT.  *See* Opp'n to Mot. to Dismiss and Limit Scope of Review, Ex. A (Dkt. # 67).  The Government later declined to provide discovery materials outside of the administrative record because the case would be governed by the APA standard of review.  *See* Opp'n to Pl.'s Mot. to Compel (Dkt. # 41).  The court denied ACT's motion to compel on this basis.  Order at 3 (March 31, 2006) (Dkt. # 46) ("[T]he court declines to issue an order compelling discovery, the fruits of which it will likely have to ignore in ruling on the merits.").

ACT would like to supplement the administrative record with the materials it previously discovered, as well as to seek additional discovery from MARAD.  The Government responds that it is undisputed that USAID never consulted with MARAD in making its bid recommendations and that the scope of review should be limited to the administrative record.  The court agrees with the Government.

The court reviews an agency action challenged under the APA based solely on the administrative record.  *Friends of the Earth v. Hintz*, 800 F.2d 822, 828 (9th Cir. 1986) (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.") (internal quotations omitted)).  Consequently, in an action for review of an administrative decision, a district court may limit discovery or deny it altogether.  *Id.* at 828.  There are, however, exceptions to the rule barring the court's review of extra-record materials.  For example, the court may grant a motion to supplement the record where:  (1) the agency does not adequately explain its decision and the court cannot review the action without considering extra-record materials, *see Public Power Council v. Johnson*, 674 F.2d 791, 793-94 (9th

ORDER – 9

Cir. 1982); (2) the agency considered facts in its decision not included in the formal record, *see Envtl. Def. Fund, Inc. v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978); (3) the complexity of the case requires additional material or cross-examination, *see Bunker Hill Co. v. EPA*, 572 F.2d 1286, 1292 (9th Cir. 1977); or (4) the agency acted in bad faith. *Public Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982). The party seeking to supplement the administrative record bears a heavy burden to show that an exception applies. *United States v. Amtreco, Inc.*, 806 F. Supp. 1004, 1006 (M.D. Ga. 1992).

ACT has not met its heavy burden of showing that any of these four exceptions applies. There is no dispute that USAID never consulted with MARAD in making its recommendations about the cargo at issue, that USAID and MARAD disagreed about the interpretation of 46 C.F.R. § 381.5, and that the Government has now adopted MARAD's view, which is favorable to ACT. ACT has not proposed that the supplementation it requests will alter the court's understanding of these accepted facts. The administrative record and the parties' positions clearly show the manner in which USAID's bidding recommendations were made. In determining whether USAID acted arbitrarily or capriciously under the APA, the court will limit its review to the administrative record.

### III. CONCLUSION

For the reasons stated above, the court GRANTS the Government's motion to dismiss certain claims and limit the scope of review (Dkt. # 66).

Dated this 26th day of October, 2007.

JAMES L. ROBART
United States District Judge

ORDER – 10