1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMERICA CARGO TRANSPORT, INC.,

                    Plaintiff,

            v.

UNITED STATES OF AMERICA,

                    Defendant.

CASE NO. C05-393JLR

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

         This matter comes before the court on Defendant United States' (the

"Government") motion for summary judgment (Dkt. # 73).  Having considered the papers

filed in support of and in opposition to the motion, the administrative record, oral

argument, and the entire case file, the court GRANTS the motion.

## I.  BACKGROUND

         Plaintiff America Cargo Transport, Inc. ("ACT") is a Washington corporation that

owns and operates U.S.-flag cargo vessels transporting various goods throughout the

world.  In March 2005, ACT filed suit for injunctive and declaratory relief against the

Government, through its Agency for International Development ("USAID"), the Maritime

Administration ("MARAD"), and the Commodity Credit Corporation ("CCC"), for an

alleged contravention of federal cargo preference laws in violation of the Administrative

ORDER GRANTING SUMMARY JUDGMENT – 1

Procedures Act ("APA"), 5 U.S.C. §§ 702-706.  Compl. ¶ 1 (Dkt. # 1).  After its motion

for a preliminary injunction was denied, ACT amended its complaint by adding Privacy

Act and unjust enrichment claims.  Sec. Am. Compl. ¶¶ 46-59 (Dkt. # 65).  ACT also

made new allegations that the district court possessed exclusive subject matter

jurisdiction, conferred by 28 U.S.C. § 1333, over consideration of its bid for a maritime

contract.  *Id.* at ¶ 1.

USAID administers the Food for Peace Program.  *See* 7 U.S.C. § 1721.  Under

Title II of the Program, the United States distributes food aid worldwide to combat

famine and malnutrition, and to promote economic and community development.  *See* 7

U.S.C. §§ 1721-22.  USAID also works with cooperating sponsors, including private non-

profit organizations, to distribute Title II aid.  *See* 7 U.S.C. § 1722(b)(1).  Although

freight forwarders for cooperating sponsors issue the solicitations for ocean transportation

of the commodities, USAID reviews the offers and makes recommendations to the

cooperating sponsors as to which offers to accept in accordance with the cargo preference

laws.  Under the Cargo Preference Act of 1954, 46 U.S.C. § 55305(b), USAID must take

steps to ensure that 50-percent of the commodities are transported on U.S.-flag vessels.

Under the Food Security Act, that 50-percent standard is raised to 75 percent for the

transportation of agricultural commodities such as the cargo at issue here.  *See* 46 U.S.C.

§ 55314(a)(1).

In February 2005, freight forwarders for two cooperating sponsors, Cooperative

for Assistance and Relief Everywhere ("C.A.R.E.") and Catholic Relief Services

("CRS"), issued solicitations for ocean transportation of Title II food aid, in the form of

5,660 metric tons of vegetable oil, to multiple port destinations in India.  Admin. Rec. at

22-48 (Dkt. # 44).  The solicitations stated that the "lowest responsive offeror meeting the

ORDER GRANTING SUMMARY JUDGMENT – 2

mandatory requirements" of the solicitations would be awarded the business.  *Id.* at 32; *see id.* at 48.

ACT contends that USAID violated 46 C.F.R. § 381.5 by failing to seek MARAD's concurrence before rejecting ACT's bid in favor of bids from foreign-flag vessels to carry the vegetable oil.  Sec. Am. Compl. ¶ 27.  Section 381.5 provides:

> Each department or agency having responsibility under the Cargo Preference Act of 1954 shall cause each *full shipload of cargo* subject to said act to be fixed on U.S.-flag vessels prior to any fixture on foreign-flag vessels for at least that portion of all preference cargoes required by that Act and the Food Security Act of 1985 to be shipped on U.S.-flag vessels . . . except where such department or agency determines, with the concurrence of the Maritime Administration, that (a) U.S.- flag vessels are not available at fair and reasonable rates for U.S.-flag commercial vessels, or (b) that there is a substantially valid reason for fixing foreign-flag vessels first.

46 C.F.R. § 381.5 (emphasis added).  In the absence of an offer to carry a "full shipload of cargo," the regulation is inapplicable and MARAD's concurrence is not required.  *Id.*

In implementing this regulation, MARAD advises evaluating bids by dividing them into three categories:  Priority 1 ("P1"), Priority 2 ("P2"), and Priority 3 ("P3").  Admin. Rec. at 108-09.  P1 means cargo loaded and transported to the final destination solely on one or more U.S.-flag vessels.  *Id.* at 108.  P2 means cargo will be loaded onto a U.S.-flag vessel to be delivered to a hub, where the cargo will be placed on a foreign vessel for shipment to the final destination.  *Id.*  P3 means that foreign-flag vessels will transport the cargo for the entire voyage.  *Id.*  P1 carriers have priority over P2 carriers, which have priority over P3 carriers.

Another shipper, Maersk Sea-Land ("Maersk"), offered to transport a portion of the India-bound vegetable oil on a P1 vessel for $125 per metric ton, while ACT offered to transport the full shipload on a P1 vessel for $520 per metric ton.  *Compare id.* at 51 *with id.* at 55.  In light of this price disparity, USAID recommended that Maersk be

ORDER GRANTING SUMMARY JUDGMENT – 3

awarded the business. *Id.* at 93. USAID then awarded the remainder of the cargo to P2 and P3 vessels because ACT had not offered to transport a partial shipment and there were no other offers involving P1 vessels. *Id.* at 51, 101. ACT contends that the vessel Maersk offered in response to the solicitations was not actually a P1 vessel, and that had USAID sought MARAD's concurrence, as it was required to do, that fact would have been discovered and ACT's offer would have been accepted. Sec. Am. Compl. ¶¶ 26-27.

This case was stayed for six months so that the Government could reconcile a disagreement between its agencies about how to implement 46 C.F.R. § 381.5 and, thus, how to proceed in this litigation.[1] USAID interpreted the regulation to mean that it need not have sought MARAD's concurrence under these circumstances. The Government has now essentially adopted MARAD's position: "MARAD's concurrence is required prior to accepting an offer to carry less than a full shipload of cargo, if a shipping company has offered to carry a full shipload of cargo on a P1 vessel, and that offer is responsive and otherwise meets the agency's needs." Mot. at 8 (Dkt. # 73). Thus, the Government "do[es] not dispute that USAID was required by 46 C.F.R. § 381.5 to recommend that the ACT offer be accepted." Reply at 6 (Dkt. # 77).

In a prior order, the court dismissed ACT's claims under the Privacy Act and for unjust enrichment and monetary damages, limited the scope of review to the administrative record, and found that the APA and the APA's arbitrary and capricious standard apply to this disappointed bidder action. Order (Oct. 26, 2007) (Dkt. # 80). The Government here argues that it should be granted summary judgment on the remaining claims: (1) USAID misapplied 46 C.F.R. § 381.5; (2) USAID failed to apply the 75-

---

[1]The Government invoked a seldom-used process in which the United States Attorney's Office recommended a position to the Civil Division of the Department of Justice. Kipnis Decl. ¶ 4 (Dkt. # 52). The senior members of the Civil Division then consulted the interested agencies and made the decision. *Id.*

ORDER GRANTING SUMMARY JUDGMENT – 4

percent standard in violation of the cargo preference laws; (3) USAID and/or CCC failed

to calculate properly the "lowest landed cost"; (4) USAID acted contrary to the Booking

Guidelines; and (5) MARAD failed to establish policies or procedures to prevent

USAID's violation of the cargo preference laws.

## II. DISCUSSION

Under the law governing procurement decisions, a disappointed bidder may

challenge a government contract award under the APA. *See Iceland Steamship Co. v.*

*U.S. Dep't of the Army*, 201 F.3d 451, 453 (D.C. Cir. 2000); *see also Parola v.*

*Weinberger*, 848 F.2d 956, 958 (9th Cir. 1988) (noting in a bid-protest case that "[u]nless

a statute expressly precludes review . . . a federal district court has jurisdiction over APA

challenges to agency actions as claims 'arising under' federal law pursuant to 28 U.S.C.

§ 1331").  Agency action may be set aside only when found to be "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C.

§ 706(2)(a); *see Armstrong & Armstrong, Inc. v. United States*, 514 F.2d 402, 403 (9th

Cir. 1975); *American Cargo Trans., Inc. v. Natsios*, 429 F. Supp. 2d 139 (D.D.C. 2006),

*aff'd*, *American Cargo Trans. v. Tobias*, 222 Fed. App. 2 (2007).  "The APA arbitrary

and capricious standard of review is narrow in scope and does not permit this Court to

substitute its own judgment for that of the USAID."  *American Cargo Trans.*, 429

F. Supp. 2d at 147; *see Envt'l Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 858 n.36 (9th Cir.

1996).

Summary judgment is appropriate if the evidence, when viewed in the light most

favorable to the non-moving party, demonstrates there is no genuine issue of material

fact.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v.*

*County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).  It is undisputed that:

(1) USAID never consulted MARAD; (2) USAID should have consulted MARAD; and

ORDER GRANTING SUMMARY JUDGMENT – 5

(3) if USAID had consulted MARAD it would have recommended that ACT be awarded the cargo shipment to India.  Though ACT raises other issues, the most salient question is whether the Government's present litigation position moots ACT's attack on the Government's application of 46 C.F.R. § 381.5.

**A.    Mootness of the 46 C.F.R. § 381.5 Claim**

The Government contends that ACT's claims for injunctive and declaratory relief with respect to 46 C.F.R. § 381.5 have been mooted because the Government has adopted ACT's position that USAID was required to seek a concurrence from MARAD before making a recommendation about the cargo and has conceded that doing so would have led to ACT being awarded the bid.  The Government is correct.

"Judicial review of administrative action, like all exercises of the federal judicial power, is limited by the requirement that there be an actual, live controversy to adjudicate." *Campesinos Unidos, Inc. v. U.S. Dep't of Labor*, 803 F.2d 1063, 1067 (9th Cir. 1986).  "Where the activities sought to be enjoined already have occurred, and the appellate courts cannot undo what has already been done, the action is moot, and must be dismissed." *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002).  An exception to the mootness doctrine exists when "the action at issue is capable of repetition, yet likely to evade review." *Idaho Dep't of Fish & Game v. Nat'l Marine Fisheries Serv.*, 56 F.3d 1071, 1075 (9th Cir. 1995).  "Government actions fall within this category if (1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329 (9th Cir. 1992).

With respect to this two-prong inquiry, there is no doubt that USAID's rejection of ACT's bid qualifies as an action that was too short to allow full litigation before it ceases.

ORDER GRANTING SUMMARY JUDGMENT – 6

The vegetable oil was shipped to India long before the Government reconciled its agencies' opposing positions on 46 C.F.R. § 381.5 after more than six months of deliberation. ACT has more difficulty overcoming the second prong, i.e., whether there is a reasonable expectation that ACT will be again subjected to USAID's rejection of a properly submitted offer now that the Government has unequivocally stated that USAID must recommend offers such as ACT's and seek MARAD's concurrence before accepting offers to carry less cargo. The standard for proving that a case has been mooted by a defendant's voluntary conduct is "stringent": "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,* 528 U.S. 167, 170 (2000); *White*, 227 F.3d at 1243. "[A] government agency's moratorium that 'by its terms was not permanent' would not moot 'an otherwise valid claim for injunctive relief.'" *White*, 227 F.3d at 1243 (quoting *Friends of the Earth*, 528 U.S. at 170).

The present lawsuit served as the catalyst for resolving a dispute between USAID and MARAD regarding the proper interpretation of Section 381.5. In that skirmish, MARAD won—and so did ACT. The Government states that this now "represents the position of the Government on a going forward basis." Mot. at 8. At oral argument, ACT acknowledged that the Government's admission of fault and change in policy represented a victory for ACT, but claimed reservations about how certain terms-of-art, such as "deadweight," might be applied to thwart the now-established position that USAID must seek MARAD's concurrence before accepting an offer to carry less than a

ORDER GRANTING SUMMARY JUDGMENT – 7

full shipload of cargo.  For example, ACT would like the court to define a "full shipload of cargo" though there is no dispute that ACT offered to carry a "full shipload of cargo" here.  Opp'n at 2.  Similarly, ACT asks the court to define the Section 381.5 clause "substantially valid reason for fixing foreign-flagged vessels first" though there was no claim that such a reason existed here.  *See id.*  In other words, ACT asks the court to clarify the scope of the Government's interpretation of Section 381.5 with respect to circumstances that do not exist in the present case and never factored into USAID's rejection of ACT's offer.  The court cannot issue advisory opinions to inform the parties of what the law would be based upon a hypothetical set of facts.  *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).

The Government has repudiated USAID's interpretation of 46 C.F.R. § 381.5 and has stated that ACT would receive USAID's recommendation were substantially similar circumstances presented again.  There is no basis for suggesting that USAID's old policy will be revived after the conclusion of litigation.  ACT's APA claim based on Section 381.5 is therefore moot.  *See, e.g.*, *New England Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 18 (1st Cir. 2002) (holding that superceding agency policy mooted claim to original policy); *White*, 227 F.3d at 1243 (holding that permanent change to agency's policy mooted claim for prospective relief); *Mosley v. Hairston*, 920 F.2d 409, 415 (9th Cir. 1990) (holding that change in agency policy mooted claim for declaratory relief and "not[ing] additionally that cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties" ).

**B.     ACT's Other Claims**

ACT contends that the relevant government agencies acted arbitrarily and capriciously with respect to the 75-percent standard required by the cargo preference

ORDER GRANTING SUMMARY JUDGMENT – 8

laws, calculation of the "lowest landed cost," USAID's Booking Guidelines, and MARAD's policies and procedures. These claims are not moot because, if they led to the improper rejection of ACT's bid, such agency action would be capable of repetition and yet evade review. *See Idaho Dept. of Fish & Game*, 56 F.3d at1075; *Greenpeace Action v*, 14 F.3d at 1329 (9th Cir. 1992). Nevertheless, the administrative record does not support ACT's contentions.

### 1. *The 75-percent Standard*

ACT argues that USAID should have recommended its offer in order to comply with the 75-percent standard established by the Cargo Preference and Food Security Acts. Sec. Am. Compl. ¶¶ 30-32. ACT alleges that, as of the date of the solicitation for bids, USAID's overall preference percentage was 64.9%, but only 22% for the country of India. *Id.* at ¶ 32. According to ACT, "[a]t these low percentages, USAID was prohibited by law from awarding any cargo for delivery to India on foreign flagged vessels until the preference percentage for U.S. flagged vessels increased substantially." *Id.* Thus ACT argues that USAID was *required* to recommend a U.S.-flag vessel and acted arbitrarily and capriciously by recommending *any* foreign-flag vessel.

The court does not agree. The 75-percent standard is calculated for the Cargo Preference year, which begins October 1. *See* 46 U.S.C. § 55314(a)(2); *see also City of Milwaukee v. Yeutter*, 877 F.2d 540, 541 (7th Cir. 1989) (discussing 75-percent standard and year-long accounting period). ACT submitted its offer in February 2005, and USAID made its recommendation in March 2005, nearly seven months prior to the close of the Cargo Preference year. Apart from the requirements of 46 C.F.R. § 381.5, USAID was under no legal obligation to achieve a specific percentage by March 2005, let alone cease awarding cargo to foreign-flag vessels until the preference percentage "increased substantially." Furthermore, there is no suggestion in the administrative record that

ORDER GRANTING SUMMARY JUDGMENT – 9

USAID's application or misapplication of the 75-percent standard led it to recommend against ACT's offer.  USAID did not act arbitrarily and capriciously with respect to the 75-percent standard.

### 2.    *Lowest Landed Cost*

ACT contends that USAID "failed to calculate lowest landed cost for the contracts for vegetable oil to India" in violation of 7 C.F.R. § 1496.5.  Sec. Am. Compl. ¶ 40-42.  "Lowest landed cost" is defined to mean the "lowest combined total cost of the commodity plus transportation charges to the port of discharge."  7 C.F.R. § 1496.3(f).

Lowest landed cost is irrelevant to the inquiry into whether ACT's offer was improperly rejected here.  The CCC is responsible for procuring commodities that are to be distributed under the Food for Peace Program.  *See generally Procurement of Commodities for Foreign Donation*, 72 Fed. Reg. 6450, 6450 (Feb. 12, 2007) (adopting new rule but discussing existing scheme), *available at* 2007 WL 435856.  Under the regulations, the CCC is generally required to purchase commodities that have the lowest landed cost.  7 C.F.R. § 1496.5.  *After* the CCC has purchased the commodities, freight forwarders issue solicitations for bids to ship the commodities to their final destination.  *See generally Procurement of Commodities for Foreign Donation*, 72 Fed. Reg. at 6450.  That is, the CCC evaluated lowest landed cost at a stage prior to USAID reviewing the bids.

There is no indication that USAID was obligated to reevaluate the determination of lowest landed cost made when the CCC purchased the vegetable oil or that USAID based its recommendation against ACT on an improper calculation of lowest landed cost.[2]

---

[2]ACT argues that lowest landed cost should have been determined in accordance with U.S.-flag rates.  Opp'n at 9.  There is no indication that U.S.-flag rates were not taken into account.  USAID recommended another shipper, Maersk, because Maersk offered to transport a portion of the cargo on a P1 (i.e., U.S.-flag) vessel at a lower price.  *Compare* Admin. Rec. at 51

ORDER GRANTING SUMMARY JUDGMENT – 10

Neither USAID nor the CCC acted arbitrarily and capriciously with respect to Section 1496.5.

### 3.    *USAID's Booking Guidelines and MARAD's Policies and Procedures*

In its Second Amended Complaint, ACT alleges that USAID "failed to follow . . . its own Booking Guidelines in its procurement and award process for the vegetable cargo to India."  Sec. Am. Compl. ¶ 42.  ACT also argues that MARAD "failed to establish and enforce policies and procedures" to prevent USAID's alleged violations.  *Id.* ¶¶ 38-40. These claims lack merit.

First, ACT fails to identify what provision of the Booking Guidelines that USAID allegedly violated.  An agency is presumed to have followed its regulations, such that ACT's bare allegation of a misapplication, without a specification of *which* rule or regulation was misapplied, must fail.  *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977); *Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.*, 378 F.3d 1059, 1071 (9th Cir. 2004), *amended*, 387 F.3d 968 (9th Cir. 2004).  Second, ACT cannot identify the statutory basis for MARAD's duty to establish policies and procedures to govern USAID's review of Title II bids.  *See ONRC Action v. BLM*, 150 F.3d 1132, 1137 (9th Cir. 1998) (holding that the court has the power to order the agency to carry out its substantive statutory mandates when the agency recalcitrance is in the face of clear statutory duty or is of such a magnitude that it amounts to an abdication of statutory responsibility).  Third, ACT has failed to respond to the Government's summary judgment motion on these claims, which implies an admission that the government's

---

*with id.* at 55. As discussed earlier, the Government concedes that USAID should have sought MARAD's concurrence and recommended ACT's offer to transport a "full shipload" based on 46 C.F.R. § 381.5.

ORDER GRANTING SUMMARY JUDGMENT – 11

1  arguments have merit.  *See* Local Rule W.D. Wash. CR 7(b)(2) ("If a party fails to file

2  papers in opposition to a motion, such failure may be considered by the court as an

3  admission that the motion has merit.").

4

5         USAID did not act arbitrarily and capriciously with respect to the Booking

6  Guidelines.  MARAD did not act arbitrarily and capriciously by failing to establish and

7  enforce policies and procedures to oversee USAID's decision-making.

8                                    **III. CONCLUSION**

9         For the reasons stated, the court GRANTS the Government's motion for summary

10  judgment (Dkt. # 73) and therefore dismisses all remaining claims against the

11  Government with prejudice.

12        Dated this 5th day of November, 2007.

13

14

15  _____

16  JAMES L. ROBART
    United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING SUMMARY JUDGMENT – 12